IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| JOE GARY RIVAS, JR., | ) | |
| | ) | |
| Movant, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 6:07-CV-018-C |
| | ) | (Criminal No. 6:02-CR-042(01)-C) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | ECF |
| Respondent. | ) | |

# ORDER

Joe Gary Rivas, Jr. ("Rivas"), acting *pro se*, filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody and Memorandum in Support on April 9, 2007. The Respondent United States of America ("Government") filed a Response in Opposition and an Appendix. Rivas filed a response and a request for an evidentiary hearing on July 20, 2007.

By Order dated January 31, 2008, this Court determined that the pleadings raised disputed issues of fact regarding Rivas's claims of ineffective assistance of counsel and referred these claims to the United States Magistrate Judge for an evidentiary hearing pursuant to 28 U.S.C. § 636(b). The Magistrate Judge held this hearing on March 24, 2008. Counsel was appointed to represent Rivas at the hearing and an Assistant United States Attorney represented the Government. Rivas appeared and testified in his own behalf and the Government offered the testimony of Dennis Reeves, counsel appointed to represent Rivas in the original criminal proceedings. The Magistrate Judge made findings of fact and filed a Report and Recommendation on April 4, 2008. Counsel appointed to represent Rivas at the evidentiary hearing filed objections to the Report and Recommendation on April 14, 2008. Rivas filed Supplemental Objections on September 29, 2008, and counsel filed a

Motion to Adopt Defendant's *Pro Se* Supplemental Objections to the Report and Recommendation on September 29, 2008.

## *Findings of Fact*

After reviewing all pleadings, the records in Criminal No. 6:02-CR-042(01)-C, and the Magistrate Judge's Report and Recommendation, this Court makes the following findings:

1.  On November 19, 2002, Rivas was charged in Criminal No. 6:02-CR-042(01)-C in a sealed indictment with 27 counts in a 28-count indictment, along with 28 other named defendants.

2.  The indictment charged Rivas with conspiracy to import more than 1,000 kilograms of marijuana, in violation of 21 U.S.C. § 963; participating in a continuing criminal enterprise, in violation of 21 U.S.C. § 848; conspiracy to commit money laundering and aiding and abetting, in violation of 18 U.S.C. §§ 1956(h) and 2; possession with intent to distribute cocaine and aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii) and 18 U.S.C. § 2; distribution of marijuana and aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) and 18 U.S.C. § 2; possession with intent to distribute marijuana and aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2; and distribution of cocaine and aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2.

3.  Counsel was appointed to represent Rivas in the criminal proceedings on March 23, 2004.

4.  On April 2, 2004, counsel filed a Motion for Discovery and Inspection with Memorandum of Authorities, which was granted by Order dated April 9, 2004.

5.  On June 1, 2004, Rivas and his counsel "agreed to and signed" a Plea Agreement, which (a) advised Rivas of the rights he was waiving by pleading guilty; (b) explained that the

penalties that could be imposed were a term of imprisonment for not less than 10 years or more than life, a fine not to exceed $4,000,000.00, and a term of mandatory supervision of no less than 5 years; (c) advised Rivas that no one could predict with any certainty what guideline range would apply and that there was no agreement between the parties as to the amounts of cocaine and marijuana that Rivas would be held accountable for under U.S.S.G. §§ 2D1.1 and 1B1.3; (d) advised that the actual sentence imposed was in the sole discretion of the court; (e) required Rivas to forfeit $14,000.00 in United States currency; (f) waived Rivas's right to appeal or otherwise challenge the sentence, with limited exceptions; and (g) stated that Rivas had reviewed all legal and factual aspects of the case with his counsel, understood counsel's explanations of the terms in the Agreement, and voluntarily agreed to the Agreement.

6. On June 7, 2004, Rivas and his counsel signed a Factual Resume which set out the maximum penalty that could be imposed, listed the elements of the offense to which Rivas was pleading guilty, explained that the overall scope of the conspiracy involved at least 5 kilograms of cocaine and at least 1,000 kilograms of marijuana, and specifically noted that Rivas understood and agreed "that <u>all</u> Cocaine and Marijuana that he [wa]s reasonably foreseeable for under the 'relevant conduct' provisions of the Guidelines [would] be used to calculate his appropriate offense level."

7. On June 10, 2004, Rivas pleaded guilty in open court to one count of conspiracy to import more than 1,000 kilograms of marijuana, in violation of 21 U.S.C. § 963. The court advised Rivas of his rights, the maximum penalty that could be imposed, the elements of the offense, and that the sentence to be imposed was solely in the court's discretion. Rivas stated under oath that he was pleading guilty freely and voluntarily, his plea was not the result of any promises, threats, or coercion, he understood that he was waiving his rights including the right to a trial by jury, he

understood the maximum penalty that could be imposed, and he understood that no one could predict his Guideline range or what sentence would be imposed because sentencing was solely in the court's discretion.

8. On August 27, 2004, the Court dismissed 26 counts on the Government's motion and sentenced Rivas to a term of life imprisonment in the Bureau of Prisons, to be followed by five years' supervised release, ordered him to pay a $100.00 mandatory special assessment, and entered judgment. The sentencing hearing was contested.

9. On September 20, 2004, counsel filed a Notice of Appeal, which was dated August 31, 2004. Although the notice was not timely filed, the sentencing court granted permission for Rivas to file a late Notice of Appeal by Order dated December 4, 2004.

10. The only issue argued by counsel on appeal was that the sentencing court determined the drug quantities in Rivas's case in violation of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005).[1] The United States Court of Appeals determined that Rivas's admission to importing at least 5 kilograms of cocaine and at least 1,000 kilograms of marijuana did not "establish that Rivas pleaded guilty to the specific amounts of 264 kilograms of cocaine and more than 9,000 kilograms of marijuana" as determined by the Presentence Report. Thus, in an unpublished *per curiam* opinion filed on March 3, 2006, the Fifth Circuit remanded the case to the

---

[1]"In *Booker,* a majority of the Supreme Court extended to the federal Sentencing Guidelines the rule announced in *Apprendi v. New Jersey,* . . . and *Blakely v. Washington,* 542 U.S. 296 (2004) . . . ; [that is,] pursuant to the Sixth Amendment, any fact, other than the fact of a prior conviction, 'which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.'" *In re Elwood,* 408 F.3d 211, 212 (5th Cir. 2005) (quoting *United States v. Booker,* 543 U.S. at 244).

district court to determine whether to resentence Rivas.  *United States v. Joe Gary Rivas, Jr.,* No. 04-11137 (5th Cir. March 3, 2006).

11.	By Order dated March 28, 2006, the sentencing court found that "the same sentence would be imposed if the guidelines had been advisory, considering the factors of 18 U.S.C. § 3553(a)" and therefore resentencing was not necessary.

12.	On or about April 6, 2006, Rivas received a letter dated March 29, 2006, from counsel.  Counsel advised Rivas that he had consulted with an appellate attorney from the United States Public Defender's Office but had not found any basis to request a resentencing or challenge the March 28, 2006 Order and, therefore, "had no where else to go."

13.	In a letter dated April 11, 2006, Rivas instructed counsel to file an appeal and complain that there were no jury findings regarding his guilt-innocence and the quantity of drugs. There is no evidence in the record to show when counsel received this letter.

14.	In a letter dated May 6, 2006, Rivas requested that counsel provide him with copies of the plea agreement, a transcript of the guilty plea, and a transcript of the sentencing hearing. There is no evidence in the record to show when counsel received this letter.

15.	In a letter addressed to counsel and dated June 29, 2006, Rivas stated that he had a telephone conversation with counsel on June 25, 2006, counsel had confirmed receipt of the April 11 and May 6 letters in which he had instructed counsel to file an appeal, and counsel had stated that he did not appeal from the resentencing.

16.	On July 3, 2006, Rivas presented a copy of his June 29, 2006 letter to the sentencing court (Doc. No. 900).

17. On April 9, 2007, Rivas filed the instant Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody and a Memorandum in Support thereof. Rivas declared under penalty of perjury that he signed the motion on April 5, 2007.

18. Rivas raised the following grounds for review in his § 2255:

(a) His plea of guilty was involuntary and unintelligent because it was based on objectively deficient advice of counsel.

(b) His sentence was improperly enhanced based upon hearsay evidence and judicial, rather than jury, fact findings.

(c) Counsel ineffectively failed to file an appeal after Rivas's resentencing and he was constructively denied counsel on appeal.

19. Both Rivas and his trial counsel testified under oath at the evidentiary hearing on March 24, 2008.

20. Rivas testified that

(a) he would have gone to trial if he had known that he was exposed to a sentence of more than 10 years because a sentence greater than 10 years was effectively a life sentence for him;

(b) he reviewed the plea agreement with his attorney; the plea agreement stated that the range of punishment was a term of 10 years to life; the sentencing judge advised him of this range of punishment before he pleaded guilty; and he believed that this was "just standard language" and he would get a downward departure such that he would not be sentenced to a term longer than 10 years;

(c) he believed that he would not have a good chance at trial because when his attorney visited him at the Dickens County Correctional Facility, counsel brought in several large boxes of discovery materials and told Rivas he did not have the time or resources to go through the discovery; therefore, Rivas asked him to see if he could work out a plea agreement;

(d) he would not have pleaded guilty if he thought it was possible that he would be sentenced to more than 10 years and he believed that he would be eligible for a downward departure and a sentence of five years once he had interviewed with government agents;

6

(e) he signed the plea agreement and told the sentencing judge that he understood because he trusted his attorney, he believed the range of punishment language was only "standard language," and this belief was based on his attorney's statement about not having the time or resources;

(f) he received the March 28 Order on April 6, 2006;

(g) he received a letter from counsel indicating that the court had imposed the same sentence and there was nowhere else to go; and

(h) Rivas wrote to his attorney on April 11, 2006, and asked him to appeal, and he tried to call his attorney but never reached him until sometime after April 11, 2006.

The Court has jurisdiction over the parties and subject matter pursuant to 28 U.S.C. § 2255.

### *Conclusions of Law*

Relief under § 2255 is reserved for transgressions of constitutional rights and "injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed." *United States v. Williamson,* 183 F.3d 458, 462 (5th Cir. 1999). *See United States v. Bousley,* 523 U.S. 614, 621 (1998) (quoting *Reed v. Farley,* 512 U.S. 339, 354 (1994) (quoting *Sunal v. Large,* 332 U.S. 174, 178 (1947))) ("Habeas review is an extraordinary remedy and '"will not be allowed to service for an appeal."'"). "Pursuant to the Supreme Court's recent decision in *Bousley v. United States,* [523 U.S. 614, 621-623 (1998)], a [federal prisoner] can successfully petition for § 2255 relief after a guilty plea only if: (1) the plea was not entered voluntarily or intelligently, . . . or (2) the petitioner establishes that he is actually innocent of the underlying crime." *United States v. Sanders*, 157 F.3d 302, 305 (5th Cir. 1998) (internal citations omitted).

1. *Was Rivas's plea of guilty voluntary and knowing?*

"A plea of guilty must, as a matter of due process, be a voluntary, knowing, and intelligent act." *United States v. Guerra,* 94 F.3d 989, 995 (5th Cir. 1996). "A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is

7

waiving, . . . or because he has such an incomplete understanding of the charge that his plea cannot stand as an adequate admission of guilt." *Henderson v. Morgan,* 426 U.S. 637, 645 n. 13 (1976). "To be knowing and intelligent, the defendant must have a 'full understanding of what the plea connotes and of its consequences.'" *United States v. Hernandez,* 234 F.3d 242, 255 (5th Cir. 2000) (quoting *Boykin v. Alabama*, 395 U.S. 238, 244 (1969)). "The defendant need only understand the direct consequences of the plea; he need not be made aware of every consequence that, absent a plea of guilty, would not otherwise occur." *Id.* Thus, "[a] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper . . . ." *United States v. Amaya,* 111 F.3d 386, 389 (5th Cir. 1997) (quoting *Brady v. United States,* 397 U.S. 742, 755 (1970) (quoting *Shelton v. United States,* 246 F.2d 571, 572 n. 2 (5th Cir. 1957) (en banc), *rev'd on other grounds,* 356 U.S. 26, (1958))) (emphasis omitted).

Rivas signed a plea agreement and stated that he understood the range of punishment that could be imposed, his attorney had explained and he understood the plea agreement, he understood that no one could predict what sentence would be imposed because it was solely in the sentencing court's discretion, and he was pleading guilty voluntarily. An unambiguous plea agreement that is signed by a defendant is accorded great evidentiary weight. *United States v. Abreo,* 30 F.3d 29, 32 (5th Cir. 1994). *See United States v. Brewer,* 60 F.3d 1142, 1145 (5th Cir. 1995) (finding that a plea agreement which declared that only the court could determine the sentence, stated that the defendant

had reviewed the case with his attorney and was satisfied with his representation, and expressly negated the existence of any other agreements about lenient sentencing was not ambiguous).

Furthermore, at the rearraignment and plea hearing on June 10, 2004, the Government read the count of indictment to which Rivas was pleading in open court. Rivas then stated in open court that he had reviewed the Plea Agreement and Factual Resume with his attorney. He advised the sentencing court that he understood the offense with which he had been charged and stated under oath that he had read and signed the Plea Agreement and understood its terms and conditions. He reiterated that his guilty plea was not the result of any force or threats on the part of the Government; he was not under the influence of any medications; he understood that he would be sentenced under the United States Sentencing Guidelines and no one could advise with any degree of certainty which guideline would apply; he understood the rights that he was waiving; he understood the factual basis for his guilty plea as set out in the Factual Resume; and he was pleading guilty because he was guilty and for no other reason. After the district court explained the minimum and maximum penalties that could be imposed, Rivas stated that he understood the maximum penalties that could be imposed. The sentencing court concluded the hearing by finding that Rivas was fully competent and capable of entering an informed plea and that his plea of guilty was knowing, voluntary, and supported by an independent basis in fact.

A defendant may not ordinarily refute his testimony given under oath at a plea hearing because "[s]olemn declarations in open court carry a strong presumption of 'verity,' forming a 'formidable barrier in any subsequent collateral proceedings,'" *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998) (quoting *Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977)). *See DeVille v. Whitley,* 21 F.3d at 659 (holding that attestations as to voluntariness at a plea colloquy in open

court carry "a strong presumption of verity"). For a petitioner to contradict his statements made in open court at the guilty plea, "there must be independent indicia of the likely merit of the petitioner's contentions, and mere contradiction of his statements at the guilty plea hearing will not carry his burden." *Davis v. Butler,* 825 F.2d 892, 894 (5th Cir. 1987) (quoting *United States v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir. 1986)). *See United States v. Cothran*, 302 F.3d 279, 284 (5th Cir. 2002) (holding that statements made at the plea colloquy are entitled to "greater weight" than "unsupported, after-the-fact, self-serving revisions"). Rivas has failed to provide any support for his claims of an involuntary or unintelligent plea other than his own conclusory allegations.

### 2. *Did ineffective assistance of counsel render Rivas's plea involuntary and unknowing?*

To demonstrate that ineffective assistance of counsel rendered his guilty plea involuntary, Rivas must show that (1) counsel's performance was objectively deficient and (2) the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668 (1984); *United States v. Seyfert,* 67 F.3d 544, 547 (5th Cir. 1995). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland v. Washington,* 466 U.S. at 700 (emphasis added). Moreover, "[p]roving an allegation of ineffective assistance of counsel requires a very strong showing by the defendant." *United States v. Samuels,* 59 F.3d 526, 529 (5th Cir. 1995).

An attorney's performance falls below the constitutional minimum when it is unreasonable in light of all the circumstances. *United States v. Haese,* 162 F.3d 359, 364 (5th Cir. 1998). Because of the inherent difficulties in determining whether an attorney has performed in a reasonably objective manner, this Court "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Id.* at 364 (quoting *Strickland*

*v. Washington,* 466 U.S. at 689). An attorney renders effective assistance to a defendant pleading guilty when he ensures that the defendant intelligently and voluntarily agrees to plead guilty. *Randle v. Scott,* 43 F.3d 221, 225 (5th Cir. 1995). "That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing." *McMann v. Richardson,* 397 U.S. 759, 770 (1970). Indeed, it is part of counsel's role to "predict how the facts, as he understands them, would be viewed by a court." *Id.* at 769.

To demonstrate that he was prejudiced by counsel's allegedly deficient performance, Rivas must show that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart,* 474 U.S. 52, 59 (1985); *United States v. Glinsey,* 209 F.3d 386, 392 (5th Cir. 2000). In regard to the prejudice requirement, the Fifth Circuit Court of Appeals has determined that

> [s]imply alleging prejudice will not suffice. Whether the [movant] is able to persuade us that he was prejudiced depends partly on his chances for success at trial. If the [movant] claims that counsel erred by failing to investigate or discover certain exculpatory evidence, the prejudice determination will depend upon whether the discovery of such evidence would have influenced counsel to change his advice regarding the guilty plea.

*Mangum v. Hargett,* 67 F.3d 80, 84 (5th Cir. 1995). *See Deville v. Whitley,* 21 F.3d 654, 659 (5th Cir. 1994) (holding that a petitioner must "affirmatively prove, and not merely allege, prejudice").

For a petitioner to contradict his statements made in open court at the guilty plea, "there must be independent indicia of the likely merit of the petitioner's contentions, and mere contradiction of his statements at the guilty plea hearing will not carry his burden." *Davis v. Butler,* 825 F.2d 892, 894 (5th Cir. 1987) (quoting *United States v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir. 1986)).

11

Although Rivas conclusorily argues that he believed that the statements in his Plea Agreement were simply "standard language" and misrepresented the "probable sentence that Rivas would receive," he has presented no "independent indicia" to support his claims. *See United States v. Cothran,* 302 F.3d at 284 ("[A] defendant's after-the-fact testimony that he did not read the plea is irrelevant where the colloquy demonstrates that he understood the plea."); *United States v. Henderson,* 72 F.3d 463, 465 (5th Cir. 1995) (holding that a defendant's claim that his attorney advised him to plead guilty without informing him of the contents of the plea agreement was without merit where the record indicated that he had answered the court affirmatively when asked if his attorney had reviewed the contents of the agreement with him and his responses to the court's questions regarding the agreement indicated that he understood the agreement when the court accepted his guilty plea). As set out above, the record clearly shows that Rivas was advised of the maximum sentence that could be imposed; he was advised that no one could predict his sentence with any accuracy under the Guidelines; he was advised that his sentence was in the court's discretion; and he stated in open court that he was pleading guilty freely and voluntarily and no one had made him any promises.

The Court has reviewed Rivas's pleadings, the Factual Resume, the Plea Agreement, and transcripts of the plea hearing and sentencing, and finds that his allegations of coercion and involuntariness are conclusory and wholly unsupported by the record. "Conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." *Miller v. Johnson,* 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle,* 694 F.2d 1008, 1013 (5th Cir. 1983)).

Rivas has not demonstrated that his counsel's performance rendered his plea of guilty involuntary or unknowing.

*3.*     *Was Rivas denied his right to appeal because of ineffective assistance of counsel?*

Rivas argues that he was deprived of the right to appeal the sentencing court's failure to reduce his sentence after the case was remanded from the Fifth Circuit Court of Appeal because his counsel failed to file the appeal.

It has long been held "that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). The Supreme Court has explained that "[i]f counsel has consulted with the defendant [regarding an appeal], the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.* at 478. As a constitutional matter, however, not every case in which counsel fails to consult with a defendant about an appeal is unreasonable performance and therefore deficient. *Id.* at 479. Rather, "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for an appeal), or (2) that this particular defendant demonstrated to counsel that he was interested in appeal." *Id.* at 80.

The uncontroverted testimony shows that the sentencing court advised Rivas at the time of sentencing that he had ten days to file an appeal; counsel wrote to Rivas on March 29, 2006, the day after the March 28 Order denying resentencing was entered; Rivas received counsel's letter on April 6, 2006; Rivas wrote a letter dated April 11, 2006, instructing counsel to file an appeal; and Rivas did not speak with counsel by telephone after receiving the March 29 letter. The period for filing an appeal from the resentencing expired on April 7, 2006; therefore, Rivas did not instruct his

13

counsel to file the appeal before the period expired. *See* Fed.R.App.P. 4(b) ("In a criminal case, a defendant shall file the notice of appeal in the district court within 10 days after the entry of either the judgment or order appealed from . . . ."). Thus, even if counsel was arguably ineffective for failing to file the appeal upon receipt of the letter dated April 11, Rivas cannot show that he was prejudiced because the appeal was subject to dismissal as untimely. *See Penson v. Ohio,* 488 U.S. 75, 83-84 (1988) (noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless); *United States v. Williamson,* 183 F.3d 458, 463 (5th Cir. 1999) (holding that on a claim of ineffective assistance of appellate counsel, a court must "counterfactually determine the probable outcome on appeal had counsel raised the argument").

## *Conclusion*

For these reasons, the Court finds:

1. The Report and Recommendation filed on April 4, 2008, should be adopted.

2. Rivas's objections to the Report and Recommendation should be overruled.

3. Rivas's Motion to Vacate, Set Aside, or Correct Sentence should be DENIED and dismissed with prejudice.

SO ORDERED.

All relief not expressly granted is denied and any pending motions are denied.

Dated December 17, 2008.

_____
SAM R. CUMMINGS
UNITED STATES DISTRICT COURT